## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

JOSE MANUEL ROSALES RODRIQUEZ;

A 077 782 651

**Petitioner,**

**V.**

MUKASEY, MICHAEL  Acting Attorney General of the United States;  KEVIN D.

ROONEY, Dir., EOIR, Immigration Court, MICHAEL CHERTOFF, Secretary, DHS;

JEFF HAMILTON, ICE Detention Supervisor

**Respondents.**

---

## PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF
## PETITION FOR WRIT OF HABEAS CORPUS AND
## COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

PETITIONER, by and through their undersigned counsel, hereby respectfully

petition this Honorable Court for a writ of habeas corpus to remedy this unlawful

detention, and to enjoin Respondents from continuing to deny their release by ordering

an appropriate and individualized bond hearing or to terminate removal proceedings. In

support of this petition and complaint for declaratory and injunctive relief, petitioners

allege as follows:

**CUSTODY**

1

1.      **Jose Manuel Rosales Rodriquez, Petitioner,** is now in the custody of the DHS. Petitioner is being held without bond and without any opportunity for a hearing in front of an immigration judge.

2.      Immigration officials arrived at Petitioner's house on July 30, 2008 and placed him under arrest.  These officials stated that Petitioner was being arrested and would be deported because of a previous deportation order.  Petitioner has not been provided any documentation explaining the charges, allegations, or any other information relating to his arrest, detention, and threatened immediate deportation.

## "ARISING UNDER" JURISDICTION AND VENUE

3.      This action arises under the Constitution of the United States, the Immigration and Nationality Act (INA), 8 USC §1101 *et seq.,* and the Administrative Procedure Act ("APA"), 5 USC §701 *et seq.* This Court has jurisdiction under 28 USC §2241(c)(1) and (3), art I. §9, cl. 2 of the United States Constitution ("Suspension Clause"), and 28 USC §1331.  The custody suffered by Petitioner is in violation of the Constitution, laws, or treaties of the United States. *See e.g., **Henderson v. Reno**,* 157 F.3d 106, 122 (2d Cir. 1998), *cert. denied sub. nom. **Reno v. Navas**,* 119 S. Ct. 1141 (1999)**.** This Court may grant relief pursuant to 28 USC §2241, the APA, the Declaratory Judgment Act, 28 USC §2201 *et. seq.,* and the All Writs Act, 28 USC §1651.

4.      Venue lies in the United States District Court for the District of Colorado, where Petitioners have been detained, and where their proceedings have been held, which is also the District in which DHS District Director resides.

## PARTIES

5.      Petitioner is born in and therefore a native and citizen of Mexico.  Respondents took Petitioner into custody on July 30, 2008 and Petitioner is still in the direct control of the Respondents and they have detained them without providing his release in accordance with a reasonable bond hearing.

6.      Respondent **MICHAEL CHERTOFF** is the Director of the DHS. He is responsible for the administration of the DHS and the implementation and enforcement of the Immigration and Nationality Act (INA).  As such, he is also a custodian of Petitioners, since by the acts of the DHS; the color of authority for the immediate removal of the Petitioner from the jurisdiction of Colorado criminal courts, and previous actions of DHS agents interfering with the "constructive custody" of criminal defendants on bail in this jurisdiction, he is responsible for the "mandatory", unconstitutional and illegal detention of the Petitioner.

7.      Respondent **PETER KEISLER** is the Attorney General of the United States and is responsible for the administration of the Immigration and Naturalization Service and the implementation and enforcement of the Immigration and Naturalization Act. As such, he has ultimate custodial authority over Petitioners.

3

8.      Respondent **KEVIN D. ROONEY** is the director of the Executive Office of Immigration Review and is responsible for the enforcement and implementation of the Immigration and Naturalization Act.

## EXHAUSTION OF REMEDIES

9.      Petitioner has exhausted his administrative remedies to the extent required by law, and his only remedy is by way of this judicial action.  The Petitioner and many more individuals in situations similar to the Petitioner are losing their liberties and protection under the law each day the Respondents continue these policies and are unable to assist in their own defense, or to work at their occupations to assist in the costs associated with their defenses.

10.      There is no specific statutory requirement for exhaustion in this case; therefore this Court is limited only by its policies of judicial discretion. *See Tan v INS,* 14 F. Supp.2nd 1184, (pg. 1189)*.* By this detention Petitioner is refused his rights to due process.  By this wrongful detention Petitioner is placed in such an undefended and precarious situation that further delays will work his situation to such an *extreme and irreversible hardship*, that there is an emergency, and the damage complained of is so involved with federal and immigration laws that no alternative remedies would be effective, such that this Court might require no further proofs of exhaustion. *See Howell*

4

*v. INS,* 72 F.3rd 288.  The three part test **of *McCarthy v. Madigan*** 503 U.S. 140, 112 S.Ct. 1081, can be sufficient to avoid exhaustion especially under the "heightened, substantive due process scrutiny" powers of the U.S. District Court for actions involving civil rights violations.

11.      Exhaustion is not required where "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." ***Howell v. INS,*** 72 F.3d 288, 291 (2d. Cir. 1995). *See also,* ***McCarthy v. Madigan,*** 503 U.S. 140 at 146 (exhaustion may be excused if "the interest of the individual in retaining prompt access to a federal judicial forum [outweighs] countervailing institutional interests favoring exhaustion").

## STATEMENT OF FACTS

12.    Petitioner was advised by government officials that he would receive adjustment of status, or consulate processing for Legal Permanent Residence status if he accepted an offered voluntary departure – Petitioner was, at the time of his departure, married to a Citizen under Colorado law and had a pending application from his mother that provided § 245 (i) Life Act from the 1996 legislation.

13     His entry without inspection could have been cured before an Immigration Judge and legal permanent residency was possible for the Petitioner, but for the advice of the

government officials at the (legacy) INS Detention facilities, Aurora Colorado. As a result of the fraud or misrepresentation upon the Petitioner, he has lost all opportunity to seek adjustment before the Immigration court, is subject to "reinstatement of removal," is made a criminal under reentry statutes if he returns from his country of origin to visit or seek employment to provide for his family, and is subjected to substantial loss of rights and liberties including his "banishment for Life" currently sentenced upon him by ICE, without review.

14.     Petitioner has various sources of relief which would in a proper hearing, allow him to obtain residency documents from the DHS.  Petitioner's family is not wealthy, they have limited resources derived from, and completely dependent upon their occupations.  Petitioner and his family are substantially injured and impoverished by his incarceration, their defense against their criminal charges and the additional Immigration litigation that will arise as a result.

15.     The Respondents have detained Petitioner, one assumes, under some construction of §236(c) of the Immigration and Nationality Act, 8 USC §1226(c), or under the blanket application of a no release **for any prior removed immigrant, without consideration of the effects of Supreme Court rulings such as *St. Cyr* and *Lopez* (infra), policy.**  The petitioner may be entitled to relief from removal under existing INA laws. It is unreasonable to assume that he would be a flight risk, when there is some likelihood that Petitioner will retain, or receive legal permanent resident or some other status.

16.     Petitioner was arrested in 1999 for auto theft in Colorado. Upon information and belief the family asserts that he has never been convicted for the 1999 arrest.  As a result, at that time petitioner received voluntary departure from the United States. Petitioner was deported again in September of 2007 as a reinstatement based on his voluntary departure in 1999.

17.     Petitioner has established his life here in the United States.  He has a United States Citizen wife.  Petitioner also has three United States Citizen Children, all who were born in the United States.  The determination by USICE to remove Petitioner without a hearing will create a tremendous hardship for the Petitioner's family.

## LEGAL BACKGROUND

18.     Petitioner was advised by government officials that he would receive adjustment of status, or consulate processing for Legal Permanent Residence status if he accepted an offered voluntary departure – Petitioner was, at the time of his departure, married to a Citizen under Colorado law and had a pending application from his mother that provided § 245 (i) Life Act from the 1996 legislation.

19.     His entry without inspection could have been cured before an Immigration Judge and legal permanent residency was possible for the Petitioner, but for the advice of the government officials at the (legacy) INS Detention facilities, Aurora Colorado. As a result of the fraud or misrepresentation upon the Petitioner, he has lost all opportunity

7

to seek adjustment before the Immigration court, is subject to "reinstatement of removal," is made a criminal under reentry statutes if he returns from his country of origin to visit or seek employment to provide for his family, and is subjected to substantial loss of rights and liberties including his "banishment for Life" currently sentenced upon him by ICE, without review.

20.    Petitioner is in custody pursuant to INA §236(c), 8 USC 1226(c), which mandates his detention without providing an opportunity to demonstrate that he is not a danger or a flight risk or in the alternative, under the blanket application of a no release for aliens who have a previous deportation order for all Immigrants under color of law, subject to DHS review, rule as applied by Respondents.

21.    "The writ of habeas corpus was developed over the history of common law to protect every person from being detained, restrained, or confined by any branch or agency of the government" 28 USCA § 2241; USCA Constitution Article 1 section 9 **Skaggs v. Larson**, 90 S. Court.  5, 396 U.S. 1206, 24 L.Ed.  2d 28. It was considered the only effective means of controlling government excesses against the liberty of the person by our Patriot forefathers and thus received a special position in the body of the Constitution. "The writ of habeas corpus must be administered with initiative and flexibility essential to ensure that miscarriages of justice within its reach are surfaced and corrected" U.S. Constitution, Article one, § 9, **Harris v. Nelson,** 89 Supreme Court 1082, 394 U.S. 286, 22 Lawyers Ed. 2nd 281. Wherein, the Court also stated, "the purpose of the writ of habeas corpus is to provide a prompt and efficacious remedy for

whatever society deems to be intolerable restraints. Prior to the enactment of the REAL ID Act, these claims were reviewable by a district court through a habeas corpus petition. The new law provides that district courts "shall" transfer pending habeas corpus petitions (or the part of the case challenging a final removal, deportation or exclusion order) to the court of appeals in which a petition for review could have been filed (i.e. the circuit having jurisdiction over the place where the Immigration Court completed proceedings). Therefore the Tenth Circuit has all of the powers formerly relegated to the Habeas court, including the All Writs Act, should the District Court determine that the caselaw requires automatic conversion to a Petition for Review.

22.    In *Beijani V. Ins,* 2001, FED App. 0401P (6th Cir.), the Sixth Circuit ruled that the issue of the temporal reach of a statute, such as the retroactivity of the reinstatement provisions of IIRAIRA, was not an area where it was required to grant deference, because the DHS has no special expertise in this area.  Addressing the issue for itself, the court found that Congress clearly intended for the reinstatement provision to apply only to reentries after it became effective.  The provision that was replaced had retroactive language that was not retained in the new version, even though Congress had explicitly considered doing so.  This, combined with the presumption that unless Congress specifies that a law is to be applied retroactively, the law is to be applied only prospectively, led the court to rule that the new reinstatement law could not be applied to cases where the reentry occurred before the effective date of the reinstatement law.  Therefore, the court ruled, **Bejjani's** previous deportation

order could not be reinstated.  See also **Castro-Cortez v. INS,** 239 F3d 1037. In this case the original removal order was in 1991, <u>the later reentries were legal admissions</u>, the Petitioner assumed forgiveness of the prior removal, had no notice of any attempt to pursue the prior removal and in fact suggests that the government is barred by laches. His legal entry could not in fact have occurred but for a permission or pardon of the Attorney General and the Government should not be allowed to deny it.

23.    The Petitioner, is held by the Respondents, specifically the DHS, under the mandatory detention statutes of the INA, and without the opportunity to bail out of his incarceration and is held without an appropriate, individualized bond hearing, in which it may be demonstrated that he is neither a danger, nor flight risk.  He has no effective remedy before the DHS, or the BIA, since these administrative bodies have shown themselves to have predetermined the issue regarding mandatory detention and reinstatement of removal.

24.    Petitioner is being denied an opportunity to present a defense to deportation as DHS is preparing to remove him based solely on the deportation order that was entered in 1991.  DHS appears to be ignoring or disregarding completely any re-admission and inspection at the border as well as denying any relief based on changed circumstances or Petitioner's family situation.

25.    Judicial review should be presumed by this Court see **McNary v. Haitian Refugee Center, Inc.,** 498 U.S. 479, 496 (1991) (there is a "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative

10

decisions"); **Abbott Laboratories v. Gardner**, 387 U.S. 136, 141 (1967) ("clear and convincing evidence of contrary legislative intent" required to displace presumptive judicial review where immediate injury inflicted). If Congress wishes to remove habeas corpus review, it must provide a plain statement saying so. *See* **Sandoval v. Reno**, 166 F.3d 215, 232 (3d Cir., Jan. 26, 1999) (the court states, following **Felker v. Turpin**, 518 U.S. 651 (1996), **Ex Parte Yerger**, 75 U.S. 85 (1869) and **Ex Parte McCardle**, 74 U.S. (7 Wall.) 506 (1868), that "only a plain statement of congressional intent to remove a particular statutory grant of [habeas] jurisdiction will suffice."). *See also,* **Farquharson v. INS**, 31 F. Supp. 2d 403, 410 (D.N.J. 1999) ( "if Congress wished to repeal traditional habeas jurisdiction under Section 2241, it must have done so expressly."). "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I. §9, cl. 2.

26.     As a person residing in the United States as a lawful permanent resident, Petitioner is protected by every clause of the United States Constitution that is not expressly reserved to its citizens.  This protection includes the Due Process Clause of the Fifth Amendment, which provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law," U.S. CONST. amend. Fifth.*see,* **Plyler v. Doe,** 457 U.S. 202, 210 (1987); **Mathews v. Diaz**, 426 U.S. 67 (1976); **Yamataya v. Fisher,** 189 U.S. 86 (1903).

27.     "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." ***Foucha v. Louisiana,*** 504 U.S. 71, 80 (1992). This vital liberty interest is at stake when an individual is subject to detention by the DHS. ***St. John v. McElroy***, 917 F. Supp. 243, 250 (S.D.N.Y. 1996) ("[T]he private interest affected is St. John's liberty interest, which is of the highest constitutional import."); ***Leader v. Blackman***, 744 F. Supp. 500, 509 (S.D.N.Y. 1990); *see also* ***Doherty v. Thornburgh***, 943 F. 2d 204, 208 (2d Cir. 1991) (finding that even aliens unlawfully present in the U.S. have a "substantive due process right to liberty during deportation proceedings"), *cert. dismissed,* ***Doherty v. Barr***, 503 U.S. 901 (1992).

28.     Substantive due process requires that detention authorized for non-punitive purposes not be "excessive in relation to the regulatory goal Congress sought to achieve." ***United States v. Salerno***, 481 U.S. 739, 747 (1987). In this case Petitioner is being detained and denied an opportunity to defend himself based on a deportation that has already been ordered.  Petitioner has served the five year bar ordered by the judge and has been readmitted to the United States as a Legal Permanent Resident.

29.      The language of INA § 242 (b) 9 does not preclude habeas corpus jurisdiction in the District Court over detention issues, ***Barr v. Holmes***, 73 F. Supp. 2nnd., 44, M.D. Pa. (1999).

30.     Since taking effect on October 9, 1998, section 236(c) has been the object of renewed challenges. Three district courts have held that section 236(c) suffers from the

same constitutional defects as previous mandatory detention statutes, and, consequently, have struck it down as a violation of due process. ***Van Eeton v. Beebe,*** CV 99-16-PA (D.Or. Apr. 13, 1999); ***Nguyen v. Beebe***, CV 99-340-HU (D.Or. Apr. 13, 1999); ***Martinez v. Greene***, 28 F. Supp. 2d 1275 (D. Colo. 1998).

## FIRST CLAIM FOR RELIEF

## AS A RESULT OF THE ADMISSION IN 1997 PETITIONER HOLDS STATUS AS A LEGAL PERMANENT RESIDENT AND CANNOT BE REMOVED WITHOUT JUDICIAL PROCESS

31.     Petitioner realleges and incorporates by reference each and every allegation contained in the paragraphs 1 through 28 as if set forth fully herein.

32.     DHS and Respondents are illegally detaining Petitioners either because they misapply INA §236(c) to Petitioner because DHS is attempting to reinstate a deportation that no longer has effect and no longer would apply to Petitioner. This purpose is not sufficient to outweigh the Petitioner's rights to due process and equal protection; therefore, since respondents have not afforded Petitioner an appropriate and meaningful bail hearing, this Petitioner needs the order of this Court to protect his individual liberties by denying the reinstatement of the now illegal removal, provide a bond hearing and other proper procedures in immigration court or termination of the proceedings and the reinstatement of his legal status as an LPR.

33.    Federal law recognizes that deportation as a result of criminal conviction is the "equivalent of punishment," ***Fong Haw Tan v. Phelan***, 333 U.S. 6 (1947) the "loss of property or life or all that makes life worthwhile," ***Ng Fung Ho v. White***, 259 U.S. 276 (1992). Banishing an immigrant forever, away from home and family, never to return, is a consequence that should be avoided, "a sentence to a life in exile." ***Jordan v. DeGeorge***, 341 U.S. 223 (1951).  This would be "exile, a dreadful punishment," ***Klonis v. Davis***, 13 F.2d 630, 630-631 (2d Cir. 1926). The Supreme Court has never wavered from the core principle that "aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." ***Shaughnessy v. United States ex rel. Mezei,*** 345 U.S. 206, 212(1953). See also ***Getachew v. INS***, 25 F.3d 841, 845 (9th Cir.1994).

34.    Petitioner maintains that the reinstatement procedures of 8 C.F.R. §214.8 violate due process by failing to provide for basic minimal safeguards. In particular, the reinstatement procedures violate due process because (1) there is no meaningful opportunity to review the prior deportation file and respond; (2) consequently, there is no opportunity to create a record adequate for judicial review; (3) there is no opportunity to obtain the advice and assistance of counsel;4) the decision to reinstate is not made by a neutral judge; and (5) a person subject to reinstatement is not notified of the right to judicial review.

14

35.    When the Petitioner reentered the United States after remaining in Mexico for over five years the then INS agent at the border reviewed his case on the computers and determined, while in secondary inspection, first that the LPR "green card" was valid and should not be taken from the Petitioner; and secondly that it was appropriate to allow the Petitioner entry into the United States.   Thereafter, Petitioner can establish that he left and reentered the United States many times.   Upon none of those occasions was he detained or treated in any manner as not having a legal basis for reentry. Petitioner's last entry was with inspection and he was not at that time treated as an immigrant seeking admission.   This status is a special status found to require in all Courts a higher level of Due Process than is required for immigrants seeking admission. Now USICE seeks to revoke that status of the Petitioner in a way that denies and ignores the regulations and laws of the INA. If the DHS seeks a revocation, or intends to make a finding that a revocation has occurred then there is stare decisis in a number of Circuits to the effect that the "humanitarian exception" must be considered, and the government must establish some form of hearing involving due process reflecting their decision on the required humanitarian exception consideration before they may invoke a revocation of Petitioner's status.   See, **Clara Sanchez-Trujillo v. INS**, 632 F. Supp. 1546 (District of N. Carolina, April 21, 1986), and **Estate of Wing Hing Tow v. INS**, 1990 U.S. Dist. LEXIS 16043, Case no. C901644 (ND Cal. 1990). An applicant is entitled to rebut the evidence of adverse information 8 C.F.R. §103.2(b)(16) (1988) and that evidence must be made part of the

record, *Matter of Pradieu*, 19 I&N Dec. 419 (BIA 1986) specifically on point, since it reversed where the IJ's denial and the evidence therefore were not in the record; see also *Matter of Cuello,* 20 I&N Dec. 94 (BIA 1989) and *Matter of Soriano*, 19 I&N Dec. 764 (BIA 1988).

36.     Further, the meaning of the word **"admitted,"** as used initially, in the phrase "has previously been admitted," is specified in section 101(a)(13)(A) of the Act, 8 U.S.C. 1101(a)(13)(A) (Supp. II 1996), as "the *lawful* entry of the alien into the United States." The word "lawful" has a plain meaning that we are bound to apply in interpreting the meaning of the word "admitted" in §212(h), *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984); *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291 (1988) (emphasizing that a proper determination of the plain meaning of the statute must include examination of "the particular statutory language at issue, as well as the language and design of the statute as a whole").

37.     The terminology "admitted," as used in "has previously been admitted," contemplates a lawful admission in essence, not merely one that may appear to have been legal in form, *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 388 (1993) (stating that words that are used in statutes are meant to carry "their ordinary, contemporary, common meaning"(quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979));*see also INS v. Phinpathya,* 464 U.S. 183, 189 (1984).

her formal status rather than upon her actual relationship to the society. Since under

the classical order the alien's entry was conceived of as a privilege whose continued enjoyment was conditional upon her compliance with the formal terms that the government prescribed, deportation was simply the revocation of her license, a reversion to the status quo ante. No special procedural safeguards for this reversion were thought to be necessary." Peter H. Schuck, *The Transformation of Immigration Law*, 84 COLUM. L. REV. 1, 27 (1984). Here the Government wishes to use procedural deportation processes to avoid any hearing that would entail the constitutional issues of; 1) procedural safeguards for legally admitted LPRs, 2) to avoid the *St Cyr* pre '97 conviction, procedural safeguards that would extend a "reopening " of the prior deport to the Petitioner as a matter of right; and 3) avoid the *Lopez* rule that prior state convictions for possession have no federal analogue on which to base INA deportations.

40.     The U.S. Constitution and "due process of law" embodied in the Fifth Amendment, "demands the law not be unreasonable, arbitrary or capricious and that the means selected shall have a reasonable and substantial relation to the object being sought" *U.S. v. Smith*, D. C.  Iowa, 249 F.Supp. 515, 516.  Reinstatement in this case looks like a cynical avoidance of the decisions and authority of the U.S. Supreme Court and has no valid balance against the due process rights of this Petitioner.


**PRAYER FOR RELIEF**


18

WHEREFORE, Petitioner prays that this Honorable Court grant the following relief:

(1)     Grant the writ of habeas corpus;

(2)     Issue an order enjoining Respondents from removing this Petitioner from the jurisdiction while this Court retains jurisdiction and from applying this "no release", and "reinstatement" policy to Petitioner, thereby ordering them to conduct a prompt and individualized custody hearing in which it is not reasonable to assume that every person for which the DHS has an interest is a flight risk or immediately deportable; and which applies the appropriate standards of law to the assessments of that court of the least amount of money necessary to obtain the criminal defendant's return to that court for trial;

(3)     In the alternative, to treat this writ as a petition for review and grant review of the determinations made by the DHS with respect to removal of this Petitioner; barring removal of Petitioner or should it become necessary, as this court has the power under the All Writs Act to order the DHS to provide a temporary parole, as provided by the INA for any appearances for Court in the United States, even if necessary to a petitioner at the consulate in Ciudad Juarez, Mexico, so that he may appear before this court to give evidence of his disagreement with the prior deportation, and give evidence of his entitlement under the laws United States and the INA

19

to adjust status to a legal permanent resident or otherwise reestablish his rightful status as an LPR.

(4)    Grant any other and further relief, including, where necessary, strike those provisions of DHS statutory authority which conflict with the constitutional protections afforded all persons, and if appropriate, award to Petitioners reasonable costs and attorneys' fees including attorney's fees in compliance with the Equal Access to Justice Act, 28 U.S.C. § 2412 (b); and such other action which this Honorable Court deems just and proper.

WHEREFORE, Petitioner prays that a Writ of Habeas Corpus shall be issued, directed to the Respondents, requiring them to show cause why these Petitioners should not be discharged from the restraint of liberty now imposed on them by the Respondents.

## VERIFICATION

John Elliott Reardon, under penalty of perjury, states that he is an Attorney for the Petitioner in the foregoing Petition for a Writ of Habeas Corpus, and he affirms the truth of the contents thereof upon information and belief, and he believes same to be true, and he further states that the sources of his information and belief are statements and documents provided to him by the Petitioner and the Petitioner's family.

Dated:


Friday, August 15, 2008

Respectfully submitted,

  /s/ John E. Reardon
John Elliott Reardon, CO. # 007801
826 Grand Ave., Glenwood Springs,
Colorado, 81601
(970) 928-7303